1

2

3

4                                                           **E-FILED on** _10/12/2011_

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                              SAN JOSE DIVISION

11

12   MARK SHEPHERD and DELIA SHEPHERD,        No. C-09-01405 RMW

13              Plaintiffs,

14        v.

15   S3 PARTNERS, LLC; ALARIS
     DEVELOPMENT; THE SHIELDS
16   FOUNDATION; NORTHWEST                     ORDER GRANTING IN PART AND
     CONSULTING GROUP, LLC; CORINTHIAN        DENYING IN PART MOTION FOR
17   WEALTH MANAGEMENT; GOLDEN                 SUMMARY JUDGMENT
     CREST WEALTH MANAGEMENT; PIERCE
18   ARROW INVESTORS, LLC; LIVINGSTONE
     CAPITAL; STAGECOACH RETAIL, LLC;
19   SONTERRA RETAIL CENTER, LLC;
     MICHAEL SIMS; SAM STAFFORD;              **[Re Docket No. 69]**
20   MELVIN RUSSELL SHIELDS; DAVID
     VAUGHN; DAVID SAMUELS; CHASTAN
21   SHIELDS; DOUG BURKE,

22              Defendants.

23

24        Defendants S3 Partners, LLC ("S3"),[1] Northwest Consulting Group, LLC ("Northwest"),

25   Livingstone Capital ("Livingstone"), Stagecoach Retail, LLC ("Stagecoach"), Sonterra Retail

26   Center, LLC ("Sonterra"), and Melvin Russell "Rusty" Shields ("Shields," and collectively the

27   _____

28   [1]  Although S3 is included as a moving party in the notice of motion and motion, it was omitted from
     the list on the first page of moving defendants' memorandum of points and authorities.

"moving defendants") move for summary judgment on all six claims asserted in plaintiffs' Third Amended Complaint.  Plaintiffs oppose the motion.  On September 30, 2011, the court held a hearing on defendants' motion.  Having considered the papers submitted by the parties and the arguments of counsel, and for the reasons set forth below, the court grants in part and denies in part moving defendants' motion for summary judgment.

## I. BACKGROUND

Plaintiff Mark Shepherd ("Shepherd") is a videographer.  He was hired by defendant Michael Sims to videotape a presentation given by defendants Sims, Sam Stafford, and Rusty Shields in March 2007 (the "Presentation").  At the Presentation, Sims, Stafford, and Shields discussed the formation of S3, their backgrounds and qualifications, and their respective roles in S3.  The three of them had merged their three separate companies to form S3, so that they could continue doing the same things but "in a much better and larger way."  Sims introduced Shields as having "a big banking background, investment background in a big way, and that's what he handles in the company."  He explained that "a lot of the decision making is done by the three of us but we all take our own disciplines and we apply our -- our discipline, and, you know, we keep on track in that."

During the Presentation, Sims, Stafford, and Shields also described S3's investment system and ways their clients could invest through S3.  Sims explained that investors' money would be used to buy land for development and S3 would then borrow money to develop the project, adding that "when you come into the office you'll find out all the details."  Sims stated, "We give a predictable return to our clients, it's a good return and it's predictable.  You know what you're going to get.  You're secured against land so the exchange is valid."  Shields then introduced using a home equity line of credit to borrow money for investments.  He explained that "you're maintaining that investment [on the property you own] and you're also moving into a new market with us with a very predictable return."  Shields also gave an example of investing $250,000 in a three year project, again stating that "it's very predictable, very easy," and "the total return's 355,568.75, less the original investment of 250,000, so you get your original investment back at the end of 36 months."  Later, Shields stated that investors would get paid first over the S3 partners and that "we own it all.

1   So it's a small portion of risk.  I mean, it's going to work.  We have our vested interest in making

2   sure it works."

3          After the Presentation, Shepherd contacted Sims to ask about investing through S3.

4   Shepherd had further meetings with Sims and persuaded his wife, Delia Shepherd, to invest as well.

5   On July 6, 2007, the Shepherds signed an agreement to invest $510,000 in Sonterra Retail, one of

6   S3's projects.  The Shepherds obtained the money by taking out a mortgage loan on their home with

7   the assistance of mortgage brokers who work with S3.  On September 25, 2007, the Shepherds

8   signed an agreement to invest $150,000 in another S3 project, Stagecoach Retail.  Soon after, on

9   October 25, 2007, Sonterra Retail Center LLC was involuntarily suspended by the Texas attorney

10  general.

11         In 2008, Shepherd asked for the return of his investment but was informed that, while the

12  money was secure, it could not be returned.  On June 23, 2008, Stafford and Shields each promised

13  to be responsible for one third of the "deficit" in the Sonterra project, corresponding to their

14  fractions of ownership in S3.  On July 11, 2008, Shields stated that "[t]here is an over-raise of funds

15  for [the Sonterra] project based on the continual down-sizing, first from 93 acres down to 24 acres

16  then to a little over 5 acres."  Thus, Shields had reduced the Shepherds' initial investment from

17  $510,000 to $155,982.44 and offered to issue a note from S3 for the remaining amount.  Shepherd

18  asked why the over-raised money could not simply be returned.  On July 22, 2008, Sims responded

19  that the money could not be returned because, as best as he could determine, "Rusty just took it."

20         It is unclear whether the Shepherds ever recovered any of their money, but they never

21  received any returns on their investments.  Moving defendants acknowledge that "plaintiffs invested

22  and lost a great deal of money."  Dkt. No. 78 at 9.  The Shepherds claim they were misled by

23  statements made at the Presentation and relied on them in deciding to invest through S3.  The

24  Shepherds also contend defendants fraudulently concealed the fact that Shields had been convicted

25  of felony larceny and been involved in a personal bankruptcy.  The Shepherds filed the present case

26  on March 31, 2009.  The operative complaint asserts six claims for relief: (1) federal securities fraud

27  in violation of Sections 10(b) and 20(a) of the Exchange Act; (2) state securities fraud; (3)

28

1   intentional misrepresentation; (4) negligent misrepresentation; (5) fraud in the inducement; and (6)

2   rescission and restitution.

3                                          **II.  ANALYSIS**

4   **A.      Summary Judgment Standard**

5          Summary judgment is proper where "there is no genuine dispute as to any material fact and

6   the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party

7   bears the initial burden of informing the court of the basis for the motion and identifying portions of

8   the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the

9   absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the

10  moving party meets its initial burden of production, the burden shifts to the nonmoving party to go

11  beyond the pleadings and, by citing materials in the record, show there is a genuine issue for trial.

12  *Id.* at 324; Fed. R. Civ. P. 56(c)(1).  The ultimate burden of persuasion on the motion remains with

13  the moving party, even if he would not bear the burden of persuasion at trial. *Nissan Fire & Marine*

14  *Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

15  **B.      Violation of Federal Securities Laws**

16         Plaintiffs claim defendants are liable for federal securities fraud under sections 10(b) and

17  20(a) of the Exchange Act.  Section 10(b) prohibits the use of manipulative or deceptive devices "in

18  connection with the purchase or sale of any security" and "by the use of any means or instrumentality

19  of interstate commerce or of the mails." 15 U.S.C. § 78j(b).   To recover under Section 10(b) and

20  Rule 10b-5 promulgated thereunder, plaintiffs must prove (1) a misstatement or omission (2) of

21  material fact (3) made with scienter (4) on which they relied (5) which proximately caused plaintiffs'

22  injury. *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 388 (9th Cir. 2002) (citation

23  omitted).  Section 20(a) makes liable those who directly or indirectly control a person who is directly

24  liable for a violation of the Exchange Act, unless the controlling person acted in good faith and did

25  not directly or indirectly induce the acts constituting the violation. 15 U.S.C. § 78t(a).

26             **1.      Fraud "in Connection with" the Purchase or Sale of a Security**

27         Moving defendants argue they are entitled to summary judgment because plaintiffs have not

28  identified any statements they made that were "in connection with" the purchase or sale of a security.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   Moving defendants argue that no securities were offered for sale during the Presentation, Shepherd

2   did not attend as an investor, and the Sonterra and Stagecoach projects were never mentioned until

3   later, after Shepherd had met with Sims several times.[2]   Moving defendants take the narrow view that

4   none of the statements at the Presentation can be actionable and none of the other parties can be

5   responsible for Sims' conduct.  Plaintiffs respond that the Presentation was part of a multi-step

6   process by which defendants executed the sales of securities.  Plaintiffs argue defendants cannot

7   escape liability simply because the securities were not identified by project name during the

8   Presentation and the agreement and exchange therefore did not occur in the same conversation as the

9   misrepresentation.

10          "Courts have not pinned down with any specificity the meaning of the requirement that fraud

11  occur in connection with the purchase or sale of a security." *Ambassador Hotel Co. v. Wei-Chuan*

12  *Inv.*, 189 F.3d 1017, 1025 (9th Cir. 1999).  However, courts have held that one factor to be

13  considered is whether the elements of transaction and loss causation are met.  *See In re Fin. Corp. of*

14  *Am. Shareholder Litig.*, 796 F.2d 1126, 1129-30 (9th Cir. 1986).  Moving defendants do not

15  challenge the element of transaction causation, and plaintiffs have asserted they relied on defendants'

16  statements in deciding to invest.  The court addresses loss causation separately below.

17          In considering whether the "in connection with" requirement is met, courts also ask whether

18  the misrepresentation has to do with the intrinsic nature of the security or with risks related to the

19  method of their purchase.  *Id.* at 1130; *see Ambassador Hotel*, 189 F.3d at 1026.  In *Arrington v.*

20  *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 651 F.2d 615, 619 (9th Cir. 1981), the court held that

21  "[m]isrepresentation of the risks of buying securities on margin in a declining market is fraud 'in

22  connection with' the purchase of securities."  The court noted that the defendant had also

23  misrepresented analyst recommendations with respect to specific stocks.  *Id.*  Together, the

24

25  [2]  On similar grounds, moving defendants object to several exhibits attached to the declaration of
    Mark Shepherd, Dkt. No. 76, including a DVD recording of the Presentation.  Defendants argue the
26  exhibits are irrelevant and inadmissible because they do not mention Sonterra or Stagecoach,
    moving defendants were not involved in creating the document, and/or plaintiffs do not claim
27  reliance or falsity of the document.  The objections are overruled.  While some of moving
    defendants' arguments may be reasons that the exhibits do not contain actionable misrepresentations,
28  they are not grounds for finding the exhibits entirely irrelevant and inadmissible.  These documents
    are relevant to show, for example, the relationships between the parties.

United States District Court
For the Northern District of California

1  misrepresentations "made up a scheme to induce Arrington to borrow money from Merrill Lynch to

2  engage in commission-producing securities purchases through Merrill Lynch," which was sufficient

3  to meet the "in connection with" requirement.  *Id.*  The situation here is similar to *Arrington*.  During

4  the Presentation, defendants discussed both the nature of investments with S3, such as their

5  predictable returns, and the risks related to their method of purchase, such as the use of home equity

6  lines of credit to finance the investment.  Plaintiffs, like those in *Arrington*, assert a fraudulent

7  scheme to induce them to take out loans and invest in defendants' real estate development projects.

8          Moreover, in the context of public documents, the "in connection with" requirement is met

9  where the document is reasonably calculated to influence the investing public or is something on

10  which an investor would presumably rely, such as a press release or annual report.  *See SEC v. Rana*

11  *Research, Inc.*, 8 F.3d 1358, 1362 (9th Cir. 1993).  The Presentation appears to have served an

12  analogous purpose here: it was designed to influence investors and convince them to make

13  investments through S3.  Sims even referred to providing full details about the investments "when

14  you come into the office."  Moving defendants emphasize that Shepherd did not attend the

15  Presentation as an investor; however, they have not explained the implications of that fact nor cited

16  any authority on why it is relevant.

17          The approach in *Rana* and the cases it cites do not appear to require that misstatements occur

18  at the point of sale, and the court has not found support for such a rule elsewhere.  Thus, whether or

19  not securities were directly offered at the Presentation is not dispositive.[3]  In addition, the statements

20  made at the Presentation were broadly applicable to all of the securities S3 offered, such that they

21  bore upon the nature and risks of Sonterra and Stagecoach, even if those projects were not mentioned

22  by name.  Defendants also made representations about their qualifications and experience, which

23  would again reflect on the risks of any S3-managed investment and be reasonably expected to

24  influence investors.  Thus, the court finds that misrepresentations during the Presentation were made

25  "in connection with" the sale of securities.

26

27

28  [3]  Plaintiffs object to the admissibility of Shepherd's deposition testimony that no securities were
offered at the Presentation.  The court does not rely on that testimony in this order.

## 2.     Moving Defendants' Liability

Moving defendants argue they have not violated the federal securities laws because, under *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 191 (1994), there is no liability for aiding and abetting securities fraud, and each defendant must have directly committed a manipulative or deceptive act within the meaning of Section 10(b).  Plaintiffs respond that moving defendants are liable on three grounds: direct liability for misrepresentations made at the Presentation, control person liability under Section 20(a), and alter ego liability.

### a.     Direct Liability

Moving defendants argue there can be no direct liability because Shepherd interacted only with Sims and *Central Bank* shields them from vicarious liability.  This argument rests on the theory that statements made during the Presentation are not actionable, which the court rejects as discussed above.  Shields' statements at the Presentation fall within the purview of Section 10(b) and Rule 10b-5 and therefore constitute a basis for his direct liability.  In addition to his own statements, Shields did not correct Sims when Sims represented that Shields had a big banking and investment background.  Shields admitted at his deposition that he had no experience in the securities or stock industry and that his background in finance was mainly with credit counseling and working with local mortgage companies.  Dkt. No. 75 Exh. A at 15:14-16, 45:22-48:1.  Furthermore, moving defendants do not appear to dispute that Shields was convicted of felony larceny and had been involved in a personal bankruptcy, and that he omitted to disclose those facts.

As for S3, "a corporation may be directly liable for actions by senior management personnel that are intrinsically corporate and bear the imprimatur of the corporation itself."  *Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1435 (9th Cir. 1995) (internal quotations omitted).  The Presentation was styled as one given by and about S3.  Sims, Shields, and Stafford introduced themselves as principals of S3 and appeared to be speaking on behalf of S3.  Thus, there is at least a question of fact as to whether S3 is directly liable for statements made at the Presentation.

As to Stagecoach and Sonterra, plaintiffs have presented evidence that at least Sims was significantly involved in the companies' affairs.  In addition, the operating agreements for Sonterra and Stagecoach specify that S3 was the initial manager for both companies.  Dkt. No. 76 Exhs. G, J

at § 6.1(a).  Public records indicate that both companies existed before the Presentation was given. Dkt. No. 77 Exhs. 4, 5.[4]  As discussed above, plaintiffs have presented sufficient evidence that the Presentation was designed to attract investors to S3's projects.  Plaintiffs also present evidence that S3 used the same form agreement for its investments and simply plugged in the specific project names.  *See* Dkt. No. 75 Exh. A at 67:5-12.  Thus, there is a question of fact as to whether the promotional statements made during the Presentation by Sims and by S3 as manager of the projects can be attributed to Sonterra and Stagecoach.

As to Northwest and Livingstone, plaintiffs have not presented evidence that would support direct liability under the federal securities laws.  Plaintiffs fail to address Livingstone's liability at all in their opposition, and on that basis summary judgment is granted as to Livingstone on all counts.

### b.    Control Person Liability

To prove a prima facie case under Section 20(a), a plaintiff must prove (1) a primary violation of federal securities laws and (2) that the defendant exercised actual power or control over the primary violator.  *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000).  The plaintiff need not show that the defendant was a culpable participant in the violation or that there was the exercise of actual power,[5] but the defendant may assert a good faith defense if he can show no scienter and an effective lack of participation.  *Id.*

---

[4]  Plaintiffs request judicial notice of this court's March 26, 2010 minute order, information about defendant corporations from the websites of various secretaries of state, and a cease and desist letter issued by the California Department of Corrections to certain defendants.  Dkt. No. 77.  Moving defendants do not object, but they argue that the findings in the cease and desist letter have no bearing on the this litigation.  Moving defendants are correct that, while the court may take judicial notice of the existence of the cease and desist order, it may not take judicial notice of the truth of the facts stated therein.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001).  With that understanding, the court grants plaintiffs' request for judicial notice.

[5]  Moving defendants miscite *Howard* as requiring culpable participation.  *See* Dkt. No. 69 at 14.  In their reply, moving defendants instead cite *Knollenberg v. Harmonic, Inc.*, 152 Fed. Appx. 674, 685 (9th Cir. 2005).  But *Knollenberg*, an unpublished case, relies on *Durham v. Kelly*, 810 F.2d 1500, 1503-04 (9th Cir. 1987).  After *Durham*, the Ninth Circuit decided *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir. 1990) (en banc), and held that "a plaintiff is *not* required to show 'culpable participation' to establish that a broker-dealer was a controlling person under § 20(a)."  *Id.* at 1575.  Although *Hollinger* limited its holding to the broker-dealer/registered representative context, subsequent cases have applied the same standard more broadly.  *See, e.g., Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996); *Howard*, 228 F.3d at 1065-66.  Thus, the court declines to follow *Knollenberg* and pre-*Hollinger* cases in requiring plaintiffs to affirmatively show culpable participation.

1    Plaintiffs have presented ample evidence that Sims, Shields, and Stafford were the principals

2    and primary decision-makers for S3.  Moving defendants argue that Sims acted unilaterally in his

3    later meetings with Shepherd, but they do not attempt to present a good faith defense as to

4    statements made during the Presentation.  In addition, Shields testified that Northwest was the owner

5    of one third of S3.  Dkt. No. 75 Exh. A at 25:3-12.  Thus, Northwest may be liable under Section

6    20(a) as a controlling shareholder of S3.  Plaintiffs do not address Section 20(a) liability for

7    Livingstone, Sonterra, or Stagecoach.

8    Because the court finds moving defendants may be liable as direct violators and/or

9    controlling entities, the court does not address plaintiffs' alter ego theory of liability.

10                    **3.      Loss Causation**

11    Moving defendants argue that plaintiffs cannot establish loss causation.  The element of loss

12    causation requires that the misrepresentation "touches upon the reasons for the investment's decline

13    in value."  *McGonigle v. Combs*, 968 F.2d 810, 821 (9th Cir. 1992).  For example, if the alleged

14    misrepresentation relates to the defendant's honesty and competence, the plaintiff must show that he

15    lost his investment because the defendants were not honest and competent, rather than because other

16    factors caused a general decline in the market.  *See Bastian v. Petren Res. Corp.*, 892 F.2d 680, 682,

17    684-85 (7th Cir. 1990).  Here, plaintiffs present evidence that they were promised safe, secure

18    investments with predictable returns, when in fact they have received no returns and likely lost most

19    of their principal.  They have also presented evidence that part of their loss may have been due to

20    Shields simply taking their money, which creates a question of fact as to whether misrepresentations

21    about his background and integrity are causally related to plaintiffs' loss.  Thus, summary judgment

22    cannot be granted based on lack of loss causation.

23                    **4.      Use of an Instrumentality of Interstate Commerce**

24    Moving defendants' last contention with respect to plaintiffs' federal claim is that plaintiffs

25    have failed to demonstrate the use of any instrumentality of interstate commerce in the alleged fraud.

26    Moving defendants argue that Shepherd met personally with Sims in San Jose and plaintiffs do not

27    cite any telephone conversations involving misstatements or admissions.  Plaintiffs respond that

28    Shepherd was instructed to wire money to S3's bank in Hickory, North Carolina, and the wiring

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT—No. C-09-01405 RMW
LJP                                                                                                                9

United States District Court
For the Northern District of California

1   service is an instrumentality of interstate commerce.  The use of an instrumentality of commerce

2   need not be itself a fraudulent act; it suffices if the use is "in furtherance of the alleged fraud."

3   *Hilton v. Mumaw*, 522 F.2d 588, 602 (9th Cir. 1975).  Obtaining plaintiffs' money was clearly a

4   central component of the alleged fraudulent scheme, and Sims instructed Shepherd use a wire

5   transfer.  Moving defendants have not disputed that this was an instrumentality of interstate

6   commerce or that such use does not meet the jurisdictional requirement of Section 10(b).  Thus,

7   summary judgment cannot be granted on this ground.

8   **C.      Violation of California Securities Laws**

9       Cal. Corp. Code § 25401 makes it unlawful "to offer or sell a security . . . by means of any

10  written or oral communication which includes an untrue statement of a material fact or omits to state

11  a material fact necessary in order to make the statements made . . . not misleading."  Cal. Corp. Code

12  § 25501 makes a violator of section 25401 liable for rescission or damages.  Liability under section

13  25501 is limited to actual sellers.  *SEC v. Seaboard Corp.*, 677 F.2d 1289, 1296 (9th Cir. 1982).

14  However, Cal. Corp. Code § 25504 provides for joint and several liability of those who control a

15  direct violator of section 25501 or who are officers and directors of a liable corporation.  Similarly,

16  Cal. Corp. Code § 25504.1 provides for joint and several liability of those who materially assist in a

17  violation of section 25401.  Moving defendants argue they are entitled to summary judgment

18  because (1) plaintiffs cannot prove their claim and (2) strict privity is required under section 25501

19  and plaintiffs only stand in privity with Stagecoach and Sonterra.

20      Moving defendants do not elaborate on their assertion that "Mr. Shepherd cannot prove a

21  claim against any of the defendants."  Thus, they have not met their burden to show there is no

22  dispute as to any material fact and they are entitled to judgment as a matter of law.  To the extent the

23  assertion is based on the theory that statements made at the Presentation did not constitute offering

24  or selling a security "by means of" a misrepresentation, moving defendants have not cited any

25  authority that such statements are not actionable as a matter of law.  As discussed above, the

26  Presentation appears to have been calculated to influence investors and to induce them to invest with

27  S3, which plaintiffs ultimately did.

28

**United States District Court**
For the Northern District of California

1    As to the requirement of privity, there is a question as to whether S3 was also in privity with

2    plaintiffs.  From the operating agreements, it appears that Sims signed on behalf of himself as well

3    as S3.  Dkt. No. 76 Exhs. G, J.  Moreover, as noted above, the operating agreements provide that S3

4    shall be the initial manager of the projects.  *Id.* at § 6.1(a).  Shields and Stafford also later

5    acknowledged responsibility for the Sonterra project as owners of S3.  Should plaintiff ultimately

6    establish privity with S3, Shields and Northwest would potentially be liable as controlling entities.

7    Shields may also be liable for materially assisting a violation, which does not require privity.  *See In*

8    *re ZZZZ Best Sec. Litig.*, 1990 U.S. Dist. LEXIS 11867 at *62 (C.D. Cal. 1990); *cf. Seaboard*, 677

9    F.2d at 1296 n.7 (declining to address liability under section 25504.1).  Thus, summary judgment is

10   denied except as to Livingstone.

11       **D.      Fraud, Negligent Misrepresentation, and Fraud in the Inducement**

12       Moving defendants seek summary judgment on plaintiffs' third through fifth claims for relief

13   on the grounds that plaintiffs have failed to identify any statements made by any moving defendants.

14   However, moving defendants' entire argument appears to be based on the assertion that the

15   statements made during the Presentation cannot be considered because plaintiffs' investments in

16   Sonterra and Stagecoach occurred later.  As discussed above, the court disagrees with moving

17   defendants' narrow conception of fraud.  Plaintiffs have identified specific statements made by Sims

18   and Shields on which they relied.  There is at least a question of fact as to whether Sims and Shields

19   made these statements as agents of other moving defendants, who could be liable as principals.

20   Thus, summary judgment is denied except as to Livingstone.

21       **E.      Rescission and Restitution**

22       Similar to the second count, moving defendants argue they are entitled to summary judgment

23   on plaintiffs' claim for rescission and restitution because plaintiffs cannot establish a "primary

24   violation" and because privity is required.  Again, moving defendants fail to elaborate on their first

25   argument and therefore have not met their burden of showing there is no dispute of material fact and

26   they are entitled to judgment as a matter of law.  Regarding privity, for the reasons discussed in

27   section II.C above, there is a question as to whether privity exists between plaintiffs and S3.

28

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT—No. C-09-01405 RMW
LJP

1    Plaintiffs argue that privity is not required under Cal. Corp. Code § 25503, on which their

2 rescission claim is partly based.  Plaintiffs note that section 25503 provides for liability of "any

3 person" who violates Cal. Corp. Code §§ 25110, 25130, or 25133.  However, plaintiffs ignore the

4 implications of the language that follows: "Any person who violates [certain statutory sections] shall

5 be liable *to any person acquiring from him the security sold* in violation of such section . . . ."  Cal.

6 Corp. Code § 25503 (emphasis added).  This language establishes the requirement of privity, as it

7 specifies that liability is from a seller to a buyer.  *See* 9 Witkin, Summary 10th (2005) Corp, § 446,

8 p. 1182; *see also Seaboard*, 677 F.2d at 1296 (finding liability under Cal. Corp. Code § 25501

9 limited to actual sellers because it provides violators are liable "to the person who purchases a

10 security from him").  Unlike count two, plaintiffs have not presented a theory to support liability

11 beyond those in direct privity.  Thus, summary judgment is granted as to Livingstone, Northwest,

12 and Shields.

### III. ORDER

14    For the foregoing reasons, the court grants moving defendants' motion for summary

15 judgment as follows:

16    1.    As to defendant Livingstone on all counts;

17    2.    On count six, for rescission and restitution, as to defendants Northwest and Shields.

18 The remainder of moving defendants' motion for summary judgment is denied.

21 DATED:      10/12/2011

RONALD M. WHYTE
United States District Judge